UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.A. and R.A. individually, and on behalf
of I.A., a minor, A.B. and B. L.
individually, and on behalf of S.B., a
minor, Y.B. and R.B. individually, and on
behalf of E.B., a minor, D.F. and D.G.
individually, and on behalf of M.G., a
minor, R.C. and W.G. individually, and on
behalf of E.G., a minor, J.Q. and D.Q.,
individually, and on behalf of D.Q., a
minor, S.R. and K.R. individually, and on
behalf of M.R., a minor, J.W. and L.W.
individually, and on behalf of J.W., a
minor, K.A. and J.A., individually, and on
behalf of I.A., a minor, M. B. and R.B.,
individually, and on behalf of Y.B., a
minor, M.C. and L.K., individually, and on
behalf of C.C., a minor, Y.F., individually,
and on behalf of K.H., a minor, R.M.,
individually, and on behalf of C.M., a
minor, S.W. and I.W., individually, and on
behalf of S.W., a minor, M.G.,
individually, and on behalf of M.G.-L., a
minor, and M.S., individually, and on
behalf of A.K., a minor, D.P. M.S.,
individually, and on behalf of C.S., a
minor, and O.C. and Y.C., individually,
and on behalf of O.C., a minor.

                    Plaintiffs,

          -against-

THE NEW YORK STATE EDUCATION
DEPARTMENT, JOHN B. KING, JR.
COMMISSIONER OF EDUCATION,
JUSTYN P. BATES STATE REVIEW
OFFICER, AND STEPHANIE DEYOE
STATE REVIEW OFFICER,

                    Defendants.

**SECOND AMENDED COMPLAINT**

ECF

Case No.: 13 Civ. 3077 (PGG)

Hon. Paul G. Gardephe



LAWRENCE D. WEINBERG (LW7841)
Attorney for Plaintiffs

233 East 89th Street, 2A
New York City, NY 10128
646-422-7943
Fax: 718-228-5935

c/o Susan Luger Associates, Inc.
Special Education Advocates
155 West 72nd Street
Suite 201
New York, NY 10023
212-769-4644
Fax: 212-501-8090

lawrenceweinberg@gmail.com

September 9, 2013

## SECOND AMENDED COMPLAINT

Plaintiffs, U.A. and R.A. individually, and on behalf of I.A., a minor, A.B. and B.

L. individually, and on behalf of S.B., a minor, Y.B. and R.B. individually, and on behalf

of E.B., a minor, D.F. and D.G. individually, and on behalf of M.G., a minor, R.C. and

W.G. individually, and on behalf of E.G., a minor, J.Q. and D.Q., individually, and on

behalf of D.Q., a minor, S.R. and K.R. individually, and on behalf of M.R., a minor, J.W.

and L.W. individually, and on behalf of J.W., a minor, K.A. and J.A., individually, and

on behalf of I.A., a minor, M. B. and R.B., individually, and on behalf of Y.B., a minor,

M.C. and L.K., individually, and on behalf of C.C., a minor, Y.F., individually, and on

behalf of K.H., a minor, R.M., individually, and on behalf of C.M., a minor, S.W. and

I.W., individually, and on behalf of S.W., a minor, M.G., individually, and on behalf of

M.G.-L., a minor, M.S., individually, and on behalf of A.K., a minor, D.P. and M.S.,

individually, and on behalf of C.S., a minor, and O.C. and Y.C., individually, and on

behalf of O.C., a minor (collectively referred to as "Plaintiffs"), for their Complaint

against Defendants The New York State Education Department, John B. King, Jr.,

Commissioner Of Education, Justyn P. Bates State Review Officer, and Stephanie Deyoe

State Review Officer, by their attorney Lawrence D. Weinberg, allege as follows:

PRELIMINARY STATEMENT

1.      This action is brought pursuant to the Individuals with Disabilities

Education Improvement Act (formerly the Individuals with Disabilities Education Act),

20 U.S.C. § 1401, *et seq.* (hereafter the "IDEA"), to ensure a disabled child's right to a

free appropriate public education ("FAPE"). Plaintiffs seek a remedy in this court

because no remedy is available under New York State's administrative procedures.

1

2.     Plaintiffs are the parents of disabled children who were denied access to a FAPE in the 2011-2012 or 2012-2013 school years by the New York City Department of Education ("DOE") by way of its Committee on Special Education ("CSE").

3.     Plaintiffs previously invoked New York State's administrative procedures to secure reimbursement for the tuition they paid to unilaterally selected private schools after being denied a FAPE during the 2011-2012 and 2012-2013 school years. However, M. B. and R.B., individually, and on behalf of Y.B. invoked New York State's administrative procedures to secure transportation for Y.B. to and from his private placement. Chronic and extensive delays caused by defendants have effectively denied plaintiffs of the rights conferred under the IDEA and New York State law.

4.     This Complaint is filed pursuant to the IDEA, New York State's implementing laws and regulations, Article 89 of the New York State Education Law, N.Y. Educ. Law §§ 4401 *et seq.*; 8 NYCRR §§ 200 *et seq.*, 42 U.S.C. § 1983 and public policy to obtain a determination that parents are entitled to such reimbursement.

5.     Plaintiffs also seek declaratory and injunctive relief to fix what has become a broken administrative system in New York. Plaintiffs seek remedies against The New York State Education Department, John B. King, Jr. Commissioner Of Education, and Justyn P. Bates State Review Officer because they have been denied due process by laws, regulations, and procedures created by New York State and the New York State Education Department and implemented by John B. King, Jr. Commissioner of Education, and State Review Officers Justyn P. Bates and Stephanie Deyoe, in violation of the IDEA.

6.      Plaintiffs seek status as a Class of parents who have not received or will not receive timely decisions from the defendants pursuant to FRCP 23 because (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

<u>JURISDICTION AND VENUE</u>

7.      Jurisdiction of the U.S. District Court is invoked under IDEA 20 U.S.C. § 1415(i)(2) providing for jurisdiction and a right of action for a party "aggrieved by the findings and decision" at an impartial due process hearing. Jurisdiction is also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States. This Court may order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has pendent jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein pursuant to 28 U.S.C. § 1367.

8.      Venue is properly laid in the United States District Court for New York, as authorized by 28 U.S.C. § 1391.

<u>THE PARTIES</u>

9.      Plaintiffs are all parents of minor children. The children have been classified or should have been classified as a "child with a disability" as that term is defined by 20 U.S.C. § 1401(3), and therefore, their children were entitled to receive FAPE and "related services" from the Board of Education of the City School District of the City of New York DBA New York City Department of Education ("DOE").

10.     The children and the parents are not expressly named within this complaint, because of the privacy to which they are entitled under IDEA as well as the Family Educational Rights Privacy Act ("FERPA"), 20 U.S.C. §1232.

11.     U.A. and R.A. are parents of I.A., a minor. U.A. and R.A. live in Queens County, New York.

12.     A.B. and B. L. individually, are parents of S.B., a minor. A.B. and B. L. live in New York County, New York.

13.     Y.B. and R.B. are parents of E.B., a minor. Y.B. and R.B. live in Kings County, New York.

14.     D.F. and D.G. are parents of M.G., a minor. D.F. and D.G. live in New York County, New York.

15.     R.C. and W.G. are parents of E.G., a minor. R.C. and W.G. live in Bronx County, New York.

16.     J.Q. and D.Q are parents of D.Q., a minor. J.Q. and D.Q live in New York County, New York.

17.     S.R. and K.R. are parents of M.R., a minor. S.R. and K.R. live in Queens County, New York.

18.     J.W. and L.W. are parents of J.W., a minor. J.W. and L.W. live in Richmond County, New York.

19.     K.A. and J.A. are parents of I.A., a minor. K.A. and J.A. live in Queens County, New York.

20.     M. B. and R.B. are parents of Y.B., a minor. M. B. and R.B. live in New York County, NY.

21.      M.C. and L.K. are parents of C.C., a minor. M.C. and L.K. live in New York County, NY.

22.      Y.F. is the parent of K.H., a minor. Y.F. lives in Bronx County, New York.

23.      R.M. is the parent of C.M., a minor. R.M. lives in Kings County, New York.

24.      S.W. and I.W. are parents of S.W., a minor. S.W. and I.W. live in New York County, NY.

25.      D.P. and M.S. are parents of C.S., a minor. D.P. and M.S. live in New York County, NY.

26.      M.G. is the parent of M.G.-L., a minor. M.G. lives in New York County, NY.

27.      M.S. is the parent of A.K., a minor. M.S. lives in New York County, NY.

28.      O.C. and Y.C. are the parents of O.C., a minor. O.C. and Y.C. live in New York County, NY.

29.      All plaintiffs live in the school district operated by the DOE. All plaintiffs reside in New York State.

30.      New York State has chosen to participate in the IDEA framework, and has established procedures for providing special educational services to children with disabilities, as set forth at N.Y. Educ. Law § 4401 *et seq*.

31.      New York State is a State as defined by 14 U.S.C. § 1401(31) and 34 C.F.R. § 300.40.

32.    Defendant New York State Education Department is the "State Educational Agency" in New York State as defined by 14 U.S.C. § 1401(32) and 34 C.F.R. § 300.41.

33.    Defendant John B. King, Jr. Commissioner of Education ("Commissioner King") is the officer in charge of New York State Education Department. Commissioner King is named herein in his official capacity.

34.    Defendant Justyn P. Bates ("SRO Bates") is a State Review Officer. While there are other State Review Officers occasionally employed by the New York State Education Department, SRO Bates now issues the vast majority of opinions by the Office of State Review. SRO Bates is named herein in his official capacity.

35.    Defendant Stephanie Deyoe ("SRO Deyoe") is a State Review Officer. While there are other State Review Officers occasionally employed by the New York State Education Department, SRO Deyoe consistently issues opinions for the Office of State Review. SRO Deyoe is named herein in her official capacity.

36.    A State Review Officer is defined as "an employee of the [New York] State Education Department designated by the commissioner to conduct impartial State-level review pursuant to Education Law, section 4404(2) of the determination of an impartial hearing officer in a hearing related to the identification, evaluation, program or placement of a student with a disability." 8 NYCRR § 279.1(b).

37.    DOE is the "local educational agency" as defined by 14 U.S.C. § 1401(19) and 34 C.F.R. § 300.28 and is responsible for providing plaintiffs' children with a FAPE.

38.     DOE is, and was at all material times, a corporate body, created by Article 52 of the New York State Education Law, N.Y. Educ. Law § 2550 *et seq.*, that manages and controls the educational affairs of the New York City public schools.

39.     DOE is comprised of service regions that serve special needs children. The service regions are all part of the same corporate body, the Board of Education of the City School District of the City of New York DBA New York City Department of Education.

40.     Defendant the New York State Education Department and the DOE have established policies and procedures, both written and informal, concerning the implementation of the IDEA. The DOE receives funding pursuant to the IDEA, 20 U.S.C. § 1412, and therefore must comply with the statute's provisions.

<u>FEDERAL AND STATE STATUTORY OVERVIEW</u>

41.     Pursuant to the IDEA parents of special needs children are entitled to an impartial due process hearing. 20 U.S.C. § 1415(f).

42.     Pursuant to the IDEA a person conducting hearings shall not be an employee of the State educational agency. 20 U.S.C. § 1415(f)(3)(A)(i)(I).

43.     New York State and the New York State Education Department have created a two-tier system in which impartial hearings are overseen by an Impartial Hearing Officer. 8 NYCRR § 200.5. Any aggrieved party then may appeal the decision by the Impartial Hearing Officer ("IHO") to the Office of State Review ("OSR") where the decision is appealed to a State Review Officer. 8 NYCRR § 279.1 et seq. The Office of State Review is also referred to as the State Review Office.

44.    State educational agencies are empowered to review decisions by impartial hearing officers that are appealed and make an independent decision upon completion of the record. 20 U.S.C. § 1415(g).

45.    Plaintiffs reside in the DOE's school district. The DOE is responsible for providing a FAPE to all students with disabilities, who reside in the DOE's school district, pursuant to statutory rights arising under the Federal IDEA statute, its implementing regulations, and the applicable Part 200 Regulations implemented in New York State, to the extent such regulations are not inconsistent with the IDEA.

46.    Congress enacted the IDEA to ensure that students with disabilities, such as the plaintiff children, have meaningful access to public education. States who participate in the IDEA receive substantial federal funds in exchange for their agreement to provide a free appropriate public education to all disabled children in the state, and to comply with the IDEA's procedural and substantive mandates, which include timely appeals procedures.

47.    The primary mechanism for insuring implementation of the IDEA's mandate of a free appropriate public education is the Individualized Education Plan ("IEP"), as defined by 20 U.S.C. §§ 1401(14), 1414(d). An IEP is a written statement, prepared for every child with a disability, that sets forth the special education and related services, supplementary aids and services, and program modifications or supports for school personnel, to be provided to the child, or on behalf of the child to enable that child to achieve a comprehensive set of annual goals and short-term objectives.

48.    The IEP is then implemented in a specific classroom at a specific school, which is the child's placement. DOE typically first notifies a parent of the specific

classroom placement by a final notice of recommendation ("FNR"). The FNR provides parents with the program recommendations on the IEP and the name of the school that will implement the IEP. Before receiving the FNR a parent usually has no knowledge of where the child will attend school. Once a parent receives the FNR they can contact the school and learn about the proposed school and classroom placement.

49.     Pursuant to 8 N.Y.C.R.R. 8 § 200.5, when parents request an impartial hearing, the hearing or a pre-hearing conference shall commence within the first 14 days after the expiration of the 30-day resolution period. The 30-day resolution period commences with the filing of the due process complaint.

50.     Pursuant 8 N.Y.C.R.R. § 200.5(j), the IHO is to render a decision "not later than 45 days from the date the hearing commences."

51.     As such, under New York State law, the IHO must render a decision within 89 days of the date that parent files the due process complaint.

52.     An IHO may extend the time to render a decision by 30 days at the request of a party after considering "(a) the impact on the child's educational interest or well-being which might be occasioned by the delay; (b) the need of a party for additional time to prepare or present the party's position at the hearing in accordance with the requirements of due process; (c) any financial or other detrimental consequences likely to be suffered by a party in the event of delay; and (d) whether there has already been a delay in the proceeding through the actions of one of the parties." 8 N.Y.C.R.R. § 200.5(j)(5)(ii).

53.     Pursuant to Supreme Court decisions, hearings for reimbursement of tuition address three issues: 1. Whether the district's proposed services made available

pursuant to the child's IEP were adequate to provide the child a FAPE; 2. Whether the private education services obtained by the parent were appropriate; and 3. Whether equitable considerations favor repayment (the "Burlington/Carter analysis").

54.    NY Educ. Law § 4404(1)(c) provides the school district has the burden of proof that the placement it offered the child was adequate and did not deny the child a free appropriate public education; the statute also provides that defendant has the burden of proof whether the equitable considerations favor repayment. Parents have the burden of proof that the educational services chosen by the parents were appropriate.

55.    Under prong one of the Burlington/Carter analysis, a school district may fail to provide a disabled child with a FAPE through procedural or substantive defects in the IEP or classroom placement.

56.    The fact that the private school chosen by the parents has not been approved by the State Education Department is not dispositive of a parents' claim, so long as the parents demonstrate that the services that the child receives in the unilateral placement appropriately meet the child's educational needs.

57.    Under prong two of the Burlington/Carter analysis, a parent may prove that the private education services obtained by the parent were appropriate if the education services were tailored to meet the child's individual needs and the child made educational progress at the school.

58.    Under prong three of the Burlington/Carter analysis, whether equitable considerations favor repayment requires an examination of, the parents' cooperation with the CSE and the reasonableness of the costs of the educational services chosen by the parents.

59.     Pursuant to federal and New York State law hearings regarding transportation address 1. Whether transportation is required to assist a child with a disability to benefit from special education. 34 C.F.R. § 300.34. and 2. Whether the transportation provided to the child is suitable in light of his or her disability. NY Educ. Law § 4402 (4)(a). In New York, the school district has the burden of proof in transportation cases. NY Educ. Law § 4404(1)(c)

60.     Under the IDEA and New York law a State Review Officer is to issue a decision of any appeal of an IHO's within thirty days of when said appeal is filed. 34 C.F.R. § 515 (b); N.Y. Educ. Law § 4410 (7)(d).

61.     Under the IDEA a child is to remain in his last agreed upon placement during the course of an impartial hearing. 20 U.S.C. § 1412(a)(12)(A); 20 U.S.C. § 1415(j); and 20 U.S.C. § 1439(b). This right is commonly referred to "pendency" or "stay put" and applies to a final determination after an impartial hearing.

<u>FACTUAL ALLEGATIONS</u>
<u>ORIGINAL PLAINTIFFS</u>
<u>I.A.</u>

62.     U.A. and R.A. are the parents of I.A., a minor. U.A. and R.A. live in Queens County, New York.

63.     I.A. has a long history of difficulties in school. By reason of the I.A.'s disability, he/she requires special education and related services. I.A. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

64.     I.A. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

65.    On May 25, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "May 25, 2011 IEP").

66.    Parents cooperated in all ways with the CSE.

67.    Defendant failed to provide I.A. with a FAPE through procedural and/or substantive failures in the May 25, 2011 IEP and/or the classroom placement provided by the DOE, if any.

68.    Parents timely notified the CSE that I.A. would attend Rebecca School for the 2011-2012 school year.

69.    During the 2011-2012 school year, I.A. attended Rebecca School.

70.    The cost of attendance at Rebecca School for the 2011-2012 school year was $71,063, which is reasonable relative to the services received by the child.

71.    The program at Rebecca School for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

72.    I.A.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

73.    I.A.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

74.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on October 8, 2011, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute.

75.    The IHO rendered an initial decision on May 22, 2012. The initial decision found, among other things that the DOE was responsible to reimburse I.A.'s parents for all or part of the cost of tuition at Rebecca School for the 2011-2012 school year.

76.    On June 26, 2012 the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

77.    The final responsive pleading was submitted to the State Review Officer on or about July 20, 2012.

78.    The SRO submitted a decision on July 19, 2013 after 393 days.

<u>S.B.</u>

79.    A.B. and B. L. are parents of S.B., a minor. A.B. and B. L. live in New York County, New York.

80.    S.B. has a long history of difficulties in school. By reason of the S.B.'s disability, he/she requires special education and related services. S.B. is not acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

81.    S.B. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

82.    Parents cooperated in all ways with the DOE.

83.    Defendant failed to provide S.B. with a FAPE through procedural and/or substantive failures by failing to classify her as a child with a disability and provide her with a classroom placement.

13

84.     Parents timely notified the CSE that S.B. would attend New Haven School for the 2011-2012 school year.

85.     During the 2011-2012 school year, S.B. attended New Haven School.

86.     The cost of attendance at New Haven School for the 2011-2012 school year was $63,990.00, which is reasonable relative to the services received by the child.

87.     The program at New Haven School for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

88.     S.B.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

89.     S.B.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

90.     Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on February 21, 2012, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute .

91.     The IHO rendered an initial decision on September 27, 2012. The initial decision found, among other things that the DOE was responsible to reimburse S.B.'s parents for all or part of the cost of tuition at New Haven School for the 2011-2012 school year.

92.     On November 1, 2012, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

93.     The final responsive pleading was submitted to the State Review Officer on or about December 11, 2012.

94.     The SRO submitted a decision on July 25, 2013. The decision took 226 days.

<u>E.B.</u>

95.     Y.B. and R.B. are parents of E.B., a minor. Y.B. and R.B. live in Kings County, New York.

96.     E.B. has a long history of difficulties in school. By reason of the E.B.'s disability, she requires special education and related services. E.B. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

97.     E.B. requires special education and related services to accommodate these disabilities so that she can receive a free appropriate public education in defendant's schools.

98.     E.B. is a six-year-old girl classified as being multiply handicapped. She significant global developmental delays. She does not have a specific medical diagnosis. She does not have autism.

99.     On February 2, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for E.B. (the "February 2, 2011 IEP").

100.     Parents cooperated in all ways with the CSE.

101.    Defendant failed to provide E.B. with a FAPE through procedural and/or substantive failures in the February 2, 2011 IEP and/or the classroom placement provided by the DOE, if any.

102.    The IEP meeting was held on February 2, 2011 and had an initiation date of July 1, 2011, five months later, resulting in stale goals and a stale statement of performance. The DOE witness who testified did not remember whether the goals were adapted to account for progress between February and July. The related services goals on the IEP came nearly word for word from the Rebecca School December 2010 report and did not account for any progress between then and July 2011.

103.    On or about June 9, 2011, the DOE sent parents a final notice of recommendation (FNR) for P231 @ P180. Y.B. and R.B. subsequently contacted and visited P231 @ P180 and found it to be inappropriate for various reasons and wrote letters stating so. DOE did not try and defend P231 @ P180 as appropriate.

104.    On or about June 15, 2011, the DOE sent parents an FNR for P771K @ P329. The FNR for P771K @ P329 was missing contact information or an address and parents were not able to contact or visit P771K @ P329 until after the hearing commenced. The name of the school hand written on the FNR and it does not have an address for the school. Ex. R. Y.B. and R.B. did not know where find the school. The letter had a phone number on it. Y.B. and R.B. called that number but nobody called them back.

105.    All the children in the five 6:1:1 classrooms at P771K @ P329 have autism. Y.B. and R.B. did not believe that a classroom with only autistic children was appropriate for E.B.

106.    Parents timely notified the CSE that E.B. would attend Camp Mishkon and the Rebecca School for the 2011-2012 school year.

107.    During the 2011-2012 school year, E.B. attended Camp Mishkon and the Rebecca School.

108.    The cost of attendance at Camp Mishkon for summer 2011 was $12,500.00, which is reasonable relative to the services received by the child. The cost of attendance at Rebecca School for the 2011-2012 school year was $78,960.00, which is reasonable relative to the services received by the child.

109.    The program at Camp Mishkon and Rebecca School for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen schools.

110.    E.B.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

111.    E.B.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

112.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on July 13, 2011, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute.

113.    During the December 15, 2011 hearing the IHO appointed to hear E.B.'s case made numerous inappropriate comments and statement. Those comments include badgering witnesses, making one witness cry, berating said witness for crying, joking about making said witness cry, making disparaging remarks about the Rebecca School.

114.    On January 19, 2012, Y.B. and R.B. asked the IHO to recuse himself due to the inappropriate comments made at the December 15, 2011 hearing. While the IHO recused himself, he did not acknowledge that any comments he made on the record to be inappropriate.

115.    On January 27, 2012, Y.B. and R.B.'s counsel notified Commissioner King of the inappropriate conduct by the IHO. No investigation was ever conducted.

116.    A new IHO was appointed to hear E.B.'s case.

117.    The IHO rendered an initial decision on June 27, 2012. The initial decision found, that Y.B. and R.B. did not have standing to request tuition reimbursement and/or direct payment.

118.    The decision on standing was contrary to applicable law.

119.    The initial decision was rendered 350 days after the due process complaint was filed.

120.    Although the record closed on March 2, 2012, the IHO in his decision falsified the record and stated that the record close date was June 1, 2012.

121.    On or about August 1, 2012, Y.B. and R.B. appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

122.    The final responsive pleading was submitted to the State Review Officer on or about August 31, 2012.

123.    On July 5, 2013 the SRO issued a decision in this case. The decision overturned the June 27, 2012 decision of the IHO on standing and remanded to a new

18

IHO to issue a decision on the merits. A new IHO was assigned on July 23, 2013. The case is ongoing.

124.    E.B. has never had a last agreed upon placement.

<u>M.G.</u>

125.    M.G. has a long history of difficulties in school. By reason of the M.G.'s disability, he requires special education and related services. M.G. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

126.    M.G. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

127.    On March 3, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "March 3, 2011 IEP").

128.    Parents cooperated in all ways with the CSE.

129.    Defendant failed to provide M.G. with a FAPE through procedural and/or substantive failures in the March 3, 2011 IEP and/or the classroom placement provided by the DOE, if any.

130.    Parents timely notified the CSE that M.G. would attend Eagle Hill School for the 2011-2012 school year.

131.    During the 2011-2012 school year, M.G. attended Eagle Hill School.

132.    The cost of attendance at Eagle Hill School for the 2011-2012 school year was $56,850, which is reasonable relative to the services received by the child.

133.    The program at Eagle Hill School for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

134.    M.G.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

135.    M.G.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

136.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on or about October 13, 2011, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute .

137.    The IHO rendered an initial decision on June 28, 2012. The initial decision found, among other things that the DOE was responsible to reimburse M.G.'s parents for all or part of the cost of tuition at Eagle Hill School for the 2011-2012 school year.

138.    On or about August 2, 2012, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

139.    The final responsive pleading was submitted to the State Review Officer on or about October 17, 2012.

140.    The SRO submitted a decision on July 26, 2013. The decision took 281 days.

E.G.

141.    R.C. and W.G. are parents of E.G., a minor. R.C. and W.G. live in Bronx County, New York.

142.    E.G. has a long history of difficulties in school. By reason of the E.G.'s disability, he requires special education and related services. E.G. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

143.    E.G. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

144.    On May 11, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "May 11, 2011 IEP").

145.    Parents cooperated in all ways with the CSE.

146.    Defendant failed to provide E.G. with a FAPE through procedural and/or substantive failures in the May 11, 2011 IEP and/or the classroom placement provided by the DOE, if any.

147.    Parents timely notified the CSE that E.G. would attend Rebecca School for the 2011-2012 school year.

148.    During the 2011-2012 school year, E.G. attended Rebecca School.

149.    The cost of attendance at Rebecca School for the 2011-2012 school year was $71,063.00, which is reasonable relative to the services received by the child.

150.    The program at Rebecca School for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

151.    E.G.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

152.    E.G.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

153.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on December 7, 2011, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute .

154.    The IHO rendered an initial decision on May 31, 2012. The initial decision found, among other things that the DOE was responsible to reimburse E.G.'s parents for all or part of the cost of tuition at Rebecca School for the 2011-2012 school year.

155.    On July 5, 2012, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

156.    The final responsive pleading was submitted to the State Review Officer on or about July 30, 2012.

157.    On July 5, 2013 the SRO submitted a decision in this matter after 340 days.

<u>D.Q.</u>

158.    J.Q. and D.Q are parents of D.Q., a minor. J.Q. and D.Q live in New York County, New York.

159.    D.Q. has a long history of difficulties in school. By reason of the D.Q.'s disability, he/she requires special education and related services. D.Q. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

160.    D.Q. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

161.    On April 7, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "April 7, 2011 IEP").

162.    Parents cooperated in all ways with the CSE.

163.    Defendant failed to provide D.Q. with a FAPE through procedural and/or substantive failures in the April 7, 2011 IEP and/or the classroom placement provided by the DOE, if any.

164.    Parents timely notified the CSE that D.Q. would attend Child School for the 2011-2012 school year.

165.    During the 2011-2012 school year, D.Q. attended Child School.

166.    The cost of attendance at Child School for the 2011-2012 school year was $29,455.00, which is reasonable relative to the services received by the child.

167.    The program at Child School for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

168.    D.Q.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

169.    D.Q.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

170.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on September 9, 2011, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute .

171.    The IHO rendered an initial decision on April 23, 2012. The initial decision found, among other things that the DOE was responsible to reimburse D.Q.'s parents for all or part of the cost of tuition at Child School for the 2011-2012 school year.

172.    On May 24, 2012, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

173.    The final responsive pleading was submitted to the State Review Officer on or about June 18, 2012.

174.    On June 28, 2013 the SRO submitted a decision in this matter after 375 days.

<u>M.R.</u>

175.    S.R. and K.R. are parents of M.R., a minor. S.R. and K.R. live in Queens County, New York.

176.    M.R. has a long history of difficulties in school. By reason of the M.R.'s disability, he/she requires special education and related services. M.R. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

177.    M.R. requires special education and related services to accommodate these disabilities so that he can receive a free appropriate public education in defendant's schools.

178.    On May 24, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "May 24, 2011 IEP").

179.    Parents cooperated in all ways with the CSE.

180.    Defendant failed to provide M.R. with a FAPE through procedural and/or substantive failures in the May 24, 2011 IEP and/or the classroom placement provided by the DOE, if any.

181.    Parents timely notified the CSE that M.R. would attend Rebecca School for the 2011-2012 school year.

182.    During the 2011-2012 school year, M.R. attended Rebecca School.

183.    The cost of attendance at Rebecca School for the 2011-2012 school year was $94,750.00, which is reasonable relative to the services received by the child.

184.    The program at Rebecca School for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

185.    M.R.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

186.    M.R.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

187.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on November 22, 2011, M.R.'s parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute .

188.    The IHO rendered an initial decision on August 1, 2012. The initial

decision found, among other things that the DOE was responsible to reimburse M.R.'s

parents for all or part of the cost of tuition at Rebecca School for the 2011-2012 school

year.

189.    On September 5, 2012, the DOE appealed to New York State's second

administrative review tier, the State Review Officer of the New York State Education

Department.

190.    The final responsive pleading was submitted to the State Review Officer

on or about October 15, 2012.

191.    On July 5, 2013 the SRO submitted a decision after 263 days.

<u>J.W.</u>

192.    J.W. and L.W. are parents of J.W., a minor. J.W. and L.W. live in

Richmond County, New York.

193.    J.W. has a long history of difficulties in school. By reason of the J.W.'s

disability, he/she requires special education and related services. J.W. is acknowledged

by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

194.    J.W. requires special education and related services to accommodate these

disabilities so that she/he can receive a free appropriate public education in defendant's

schools.

195.    On May 24, 2011, pursuant to the IDEA, a committee on special education

(the "CSE") met and generated an IEP for the child (the "May 24, 2011 IEP").

196.    Parents cooperated in all ways with the CSE.

197.    Defendant failed to provide J.W. with a FAPE through procedural and/or substantive failures in the May 24, 2011 IEP and/or the classroom placement provided by the DOE, if any.

198.    Parents timely notified the CSE that J.W. would attend Rebecca School for the 2011-2012 school year.

199.    During the 2011-2012 school year, J.W. attended Rebecca School.

200.    The cost of attendance at Rebecca School for the 2011-2012 school year was $94,750.00, which is reasonable relative to the services received by the child.

201.    The program at Rebecca School for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

202.    J.W.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

203.    J.W.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

204.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on October 5, 2011, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute .

205.    The IHO rendered an initial decision on April 13, 2012. The initial decision found, among other things that the DOE was responsible to reimburse J.W.'s parents for all or part of the cost of tuition at Rebecca School for the 2011-2012 school year.

206.    On May 18, 2012, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

207.    The final responsive pleading was submitted to the State Review Officer on or about June 21, 2012.

208.    On July 19, 2013 the SRO issued a decision after 393 days.

ADDITIONAL PLAINTIFFS
I.A.

209.    K.A. and J.A. are parents of I.A.

210.    I.A. has a long history of difficulties in school. By reason of the I.A.'s disability, she requires special education and related services. I.A. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

211.    I.A. requires special education and related services to accommodate these disabilities so that she can receive a free appropriate public education in defendant's schools.

212.    On April 23, 2012, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "April 23, 2012 IEP").

213.    Parents cooperated in all ways with the CSE.

214.    DOE failed to provide I.A. with a FAPE through procedural and/or substantive failures in the April 23, 2012 IEP and/or the classroom placement provided by the DOE, if any.

215.    Parents timely notified the CSE that I.A. would attend Stephen Gaynor School for the 2012-2013 school year.

216.    During the 2012-2013 school year, I.A. attended Stephen Gaynor School.

217.    The cost of attendance at Stephen Gaynor School for the 2012-2013 school year was $49,600.00, which is reasonable relative to the services received by the child.

218.    The program at Stephen Gaynor School for the 2012-2013 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

219.    I.A.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

220.    I.A.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

221.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on September 13, 2012, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

222.    The IHO rendered an initial decision on April 29, 2013. The initial decision found, among other things that the DOE was responsible to reimburse I.A.'s parents for all or part of the cost of tuition at Stephen Gaynor School for the 2011-2012 school year.

223.    On May 30, 2013, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

224.    The final responsive pleading was submitted to the State Review Officer on or about June 10, 2013.

225.    It has now been 91 days since the final responsive pleading was submitted and no decision has been rendered by the State Review Officer.

<u>Y.B.</u>

226.    M. B. and R.B. are parents of Y.B.

227.    Y.B. has a long history of difficulties in school. By reason of the Y.B.'s disability, he requires special education and related services. Y.B. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

228.    Y.B. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

229.    On March 2012, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "March 2012 IEP").

230.    Parents cooperated in all ways with the CSE.

231.    DOE failed to provide Y.B. with a FAPE through procedural and/or substantive failures in the March 2012 IEP and/or the classroom placement provided by the DOE, if any.

232.    Parents timely notified the CSE that Y.B. would attend Stephen Gaynor School for the 2012-2013 school year.

233.    During the 2012-2013 school year, Y.B. attended Stephen Gaynor School. The DOE paid for the cost of Y.B.'s attention at Stephen Gaynor School through a stipulation of settlement. The stipulation of settlement, however, left open the issue of transportation for Y.B. to and from the Stephen Gaynor School.

234.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on January 14, 2013, parents initiated an administrative due process proceeding against the defendant, in order to secure transportation for Y.B. to and from the Stephen Gaynor School pursuant to New York law enacted pursuant to the IDEA (the "due process complaint").

235.    The IHO rendered an initial decision on May 14, 2013. The initial decision found, among other things that the DOE was responsible provide Y.B.'s parents with special education transportation to and from Stephen Gaynor School for the 2012-2013 school year.

236.    On June 18, 2013, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

237.    The final responsive pleading was submitted to the State Review Officer on or about June 27, 2013.

238.    It has now been 74 days since the final responsive pleading was submitted and no decision has been rendered by the State Review Officer.

239.    If parents do not receive a decision before September 1, 2013 they will suffer irreparable harm because the issue in this case is transportation, which cannot be compensated through monetary means.

<u>C.C.</u>

240.    M.C. and L.K. are parents of C.C.

241.    C.C. has a long history of difficulties in school. By reason of the C.C.'s disability, he requires special education and related services. C.C. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

31

242.    C.C. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

243.    On April 11, 2012, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "April 11, 2012 IEP").

244.    Parents cooperated in all ways with the CSE.

245.    DOE failed to provide C.C. with a FAPE through procedural and/or substantive failures in the April 11, 2012 IEP and/or the classroom placement provided by the DOE, if any.

246.    Parents timely notified the CSE that C.C. would attend Lang School for the 2012-2013 school year.

247.    During the 2012-2013 school year, C.C. attended Lang School.

248.    The cost of attendance at Lang School for the 2012-2013 school year was $49,500, which is reasonable relative to the services received by the child.

249.    The program at Lang School for the 2012-2013 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

250.    C.C.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

251.    C.C.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

252.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on June 19, 2012, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

253.    The IHO rendered an initial decision on February 26, 2013. The initial decision found, among other things that the DOE was not responsible to reimburse C.C.'s parents for all or part of the cost of tuition at Lang School for the 2012-2013 school year.

254.    Parents appealed the decision because the IHO found that the DOE had provided C.C. with a FAPE even though they presented no evidence that the proposed classroom placement could implement the IEP other than testimony that a seat was available, and other reasons.

255.    On April 2, 2012, M.C. and L.K. appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

256.    The final responsive pleading was submitted to the State Review Officer on or about May 3, 2013.

257.    It has now been 129 days since the final responsive pleading was submitted and no decision has been rendered by the State Review Officer.

<u>K.H.</u>

258.    Y.F. is the parent of K.H.

259.    K.H. has a long history of difficulties in school. By reason of the K.H.'s disability, he/she requires special education and related services. K.H. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

260.    K.H. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

261.    On May 25, 2012, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "May 25, 2012 IEP").

262.    Parents cooperated in all ways with the CSE.

263.    DOE failed to provide K.H. with a FAPE through procedural and/or substantive failures in the May 25, 2012 IEP and/or the classroom placement provided by the DOE, if any.

264.    Parents timely notified the CSE that K.H. would attend Cooke Center Academy for the 2012-2013 school year.

265.    During the 2012-2013 school year, K.H. attended Cooke Center Academy.

266.    The cost of attendance at Cooke Center Academy for the 2012-2013 school year was $48,500.00, which is reasonable relative to the services received by the child.

267.    The program at Cooke Center Academy for the 2012-2013 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

268.    K.H.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

269.    K.H.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

270.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on August 7, 2012, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

271.    The IHO rendered an initial decision on January 29, 2013. The initial decision found, among other things that the DOE was not responsible to reimburse K.H.'s parents for all or part of the cost of tuition at Cooke Center Academy for the 2012-2013 school year.

272.    On March 4, 2013, Y.F. appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

273.    Y.F. appealed the decision because the IHO found that the DOE had provided K.H. with a FAPE even though they presented no evidence that the proposed classroom placement could implement the IEP, and other reasons.

274.    The final responsive pleading was submitted to the State Review Officer on or about April 15, 2013.

275.    It has now been 147 days since the final responsive pleading was submitted and no decision has been rendered by the State Review Officer.

<u>C.M.</u>

276.    R.M. is the parent of C.M.

277.    C.M. has a long history of difficulties in school. By reason of the C.M.'s disability, he/she requires special education and related services. C.M. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

278.    C.M. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

279.    On May 4, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "May 4, 2011 IEP").

280.    Parents cooperated in all ways with the CSE.

281.    DOE failed to provide C.M. with a FAPE through procedural and/or substantive failures in the May 4, 2011 IEP and/or the classroom placement provided by the DOE, if any.

282.    Parents timely notified the CSE that C.M. would attend Yeshiva Education for Special Students ("YESS!") for the 2011-2012 school year.

283.    During the 2011-2012 school year, C.M. attended YESS!.

284.    The cost of attendance at YESS! for the 2011-2012 school year was $31,000, which is reasonable relative to the services received by the child.

285.    The program at YESS! for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

286.    C.M.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

287.    C.M.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

288.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on January 19, 2012, parents initiated an administrative due process proceeding against the

defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

289.    The IHO rendered an initial decision on November 9, 2012. The initial decision found, that R.M. did not have standing to request tuition reimbursement and/or direct payment.

290.    On December 14, 2012, R.M. appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department. R.M. appealed the decision because the decision on standing was contrary to law, and other reasons.

291.    The final responsive pleading was submitted to the State Review Officer on or about January 14, 2013.

292.    It has now been 228 days since the final responsive pleading was submitted and no decision has been rendered by the State Review Officer.

<u>S.W.</u>

293.    S.W. and I.W. are parents of S.W.

294.    S.W. has a long history of difficulties in school. By reason of the S.W.'s disability, he/she requires special education and related services. S.W. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

295.    S.W. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

296.    On June 19, 2012, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "June 19, 2012 IEP").

297.    Parents cooperated in all ways with the CSE.

298.    DOE failed to provide S.W. with a FAPE through procedural and/or substantive failures in the June 19, 2012 IEP and/or the classroom placement provided by the DOE, if any.

299.    Parents timely notified the CSE that S.W. would attend Stephen Gaynor School for the 2012-2013 school year.

300.    During the 2012-2013 school year, S.W. attended Stephen Gaynor School.

301.    The cost of attendance at Stephen Gaynor School for the 2012-2013 school year was $49,600.00, which is reasonable relative to the services received by the child.

302.    The program at Stephen Gaynor School for the 2012-2013 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

303.    S.W.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

304.    S.W.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

305.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on September 28, 2012, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

306.    The IHO rendered an initial decision on April 3, 2013. The initial decision found, among other things that the DOE was responsible to reimburse S.W.'s parents for all or part of the cost of tuition at Stephen Gaynor School for the 2012-2013 school year.

307.    On May 8, 2013, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

308.    The final responsive pleading was submitted to the State Review Officer on or about May 15, 2013.

309.    It has now been 117 days since the final responsive pleading was submitted and no decision has been rendered by the State Review Officer.

<u>C.S.</u>

310.    D.P. and M.S. are the parents of C.S.

311.    C.S. has a long history of difficulties in school. By reason of the C.S.'s disability, he/she requires special education and related services. C.S. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

312.    C.S. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

313.    On June 23, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child for the 2011-2012 school year.

314.    The DOE did not prepare an IEP for the child for the 2012-2013 school year.

315.    Parents cooperated in all ways with the CSE.

316.    DOE failed to provide C.S. with a FAPE through procedural and/or substantive failures during the 2012-2013 school year and conceded such during an impartial hearing.

317.    Parents timely notified the CSE that C.S. would attend Studio School for the 2012-2013 school year.

318.    During the 2012-2013 school year, C.S. attended Studio School.

319.    The cost of attendance at Studio School for the 2012-2013 school year was $77,280.00, which is reasonable relative to the services received by the child.

320.    The program at Studio School for the 2012-2013 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

321.    C.S.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

322.    C.S.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

323.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on September 27, 2012, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

324.    The IHO rendered an initial decision on March 27, 2013. The initial decision found, among other things that the DOE was responsible to reimburse C.S.'s

parents for all or part of the cost of tuition at Studio School for the 2012-2013 school year.

325.    On May 1, 2013 the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

326.    The final responsive pleading was submitted to the State Review Officer on or about May 11, 2013.

327.    It has now been 94 days since the final responsive pleading was submitted and no decision has been rendered by the State Review Officer.

M.G.-L.

328.    M.G. is the parent of M.G.-L.

329.    M.G.-L. has a long history of difficulties in school. By reason of the M.G.-L.'s disability, he/she requires special education and related services. M.G.-L. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

330.    M.G.-L. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

331.    On June 13, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "June 13, 2011 IEP").

332.    Parents cooperated in all ways with the CSE.

333.    DOE failed to provide M.G.-L. with a FAPE through procedural and/or substantive failures in the June 13, 2011 IEP and/or the classroom placement provided by the DOE, if any.

334.    Parents timely notified the CSE that M.G.-L. would attend York Prep for the 2011-2012 school year.

335.    During the 2011-2012 school year, M.G.-L. attended York Prep.

336.    The program at York Prep for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

337.    M.G.-L.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

338.    M.G.-L.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

339.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on September 26, 2011, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

340.    The IHO rendered an initial decision on October 23, 2012. The initial decision found, among other things that the DOE was not responsible to reimburse M.G.-L.'s parents for all or part of the cost of tuition at York Prep for the 2011-2012 school year.

341.    On or about November 27, 2012, M.G. appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

342.    The final responsive pleading was submitted to the State Review Officer on or about December 20, 2012.

343.    It has now been 263 days since the final responsive pleading was submitted and no decision has been rendered by the State Review Officer.

A.K.

344.    M.S. is the parent of A.K.

345.    A.K. has a long history of difficulties in school. By reason of the A.K.'s disability, he/she requires special education and related services. A.K. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

346.    A.K. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

347.    On March 17, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "March 17, 2011 IEP").

348.    Parents cooperated in all ways with the CSE.

349.    DOE failed to provide A.K. with a FAPE through procedural and/or substantive failures in the March 17, 2011 IEP and/or the classroom placement provided by the DOE, if any.

350.    Parents timely notified the CSE that A.K. would attend York Prep for the 2011-2012 school year.

351.    During the 2011-2012 school year, A.K. attended York Prep.

352.    The program at York Prep for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

353.    A.K.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

354.    A.K.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

355.    Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on May 5, 2011, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

356.    The IHO rendered an initial decision on April 17, 2012. The initial decision found, among other things that the DOE was responsible to reimburse A.K.'s parents for all or part of the cost of tuition at York Prep for the 2011-2012 school year.

357.    On May 22, 2012, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

358.    The final responsive pleading was submitted to the State Review Officer on or about June 26, 2012.

359.    The case was decided by the SRO on August 5, 2013. The decision came 405 days after submission, or 375 days late.

<u>O.C.</u>

360.    O.C. and Y.C. are parents of O.C.

361.    O.C. has a long history of difficulties in school. By reason of the O.C.'s disability, he/she requires special education and related services. O.C. is acknowledged by the DOE to be a child with a disability as defined by 20 U.S.C. § 1401(3).

362.     O.C. requires special education and related services to accommodate these disabilities so that she/he can receive a free appropriate public education in defendant's schools.

363.     On April 29, 2011, pursuant to the IDEA, a committee on special education (the "CSE") met and generated an IEP for the child (the "April 29, 2011 IEP").

364.     Parents cooperated in all ways with the CSE.

365.     DOE failed to provide O.C. with a FAPE through procedural and/or substantive failures in the April 29, 2011 IEP and/or the classroom placement provided by the DOE, if any.

366.     Parents timely notified the CSE that O.C. would attend Rebecca School for the 2011-2012 school year.

367.     During the 2011-2012 school year, O.C. attended Rebecca School.

368.     The cost of attendance at Rebecca School for the 2011-2012 school year was $94,750.00, which is reasonable relative to the services received by the child.

369.     The program at Rebecca School for the 2011-2012 school year was individually tailored to the needs of the child and the child made progress at the chosen school.

370.     O.C.'s parents cooperated with the CSE and the relative costs of the educational services chosen by the parents were reasonable.

371.     O.C.'s parents did nothing to frustrate a timely review of the child's condition before enrolling the child at private school and did nothing that prevented the DOE from providing the child with a FAPE.

372.     Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on August 22, 2011, parents initiated an administrative due process proceeding against the defendant, in order to secure reimbursement and other relief pursuant to the federal IDEA statute (the "due process complaint").

373.     The IHO rendered an initial decision on March 26, 2012. The initial decision found, among other things that the DOE was responsible to reimburse O.C.'s parents for all or part of the cost of tuition at Rebecca School for the 2011-2012 school year.

374.     On April 19, 2012, the DOE appealed to New York State's second administrative review tier, the State Review Officer of the New York State Education Department.

375.     The final responsive pleading was submitted to the State Review Officer on or about May 14, 2012.

376.     It has now been 483 days since the final responsive pleading was submitted and no decision has been rendered by the State Review Officer.

<u>ATTEMPTS AT RELIEF</u>

377.     On December 21, 2012, counsel for U.A. and R.A., Y.B. and R.B., D.F. and D.G., R.C. and W.G., J.Q. and D.Q., S.R. and K.R., and J.W. and L.W. wrote eight letters (one for each set of parents) to SRO Bates (the "December 21, 2012 letters"). The December 21, 2012 letters stated that courts in New York have noted the importance of timely decisions under the IDEA. "The procedures of [20 U.S.C.] § 1415 take on particular importance with respect to the issuance of timely administrative decisions." <u>Engwiller v. Pine Plains Cent. Sch. Dist.</u>, 110 F. Supp. 2d 236, 247 (S.D.N.Y. 2000). The court "recognizes the importance of prompt decisions throughout the administrative

review process as provided under the Act. <u>Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.</u>, 1999 U.S. Dist. LEXIS 16863 (S.D.N.Y. Oct. 26, 1999)."

378.    The December 21, 2012 letters stated, "Parents contend that by not issuing a decision you are violating their due process rights. Your untimely decision is particularly problematic as parents in this matter won the decision before the impartial hearing officer and your inaction is preventing that decision from being implemented."

379.    The December 21, 2012 letters stated, "Parents request that you issue a decision within ten business days of receipt of this letter or summarily affirm the decision of the impartial hearing officer. If you do not issue an opinion parents will take appropriate action under the IDEA and New York State Law."

380.    The December 21, 2012 letters stated were also sent to Commissioner King and to the DOE. Commissioner King did not respond.

381.    On January 31, 2013 and February 1, 2013 SRO Bates responded to the December 21, 2012 letters with two letters; SRO Bates' February 1, 2013 letter corrected a typo in his January 31, 2013 letter ("SRO Bates response"). The SRO Bates response stated, "A preliminary review of each of the parties' dispute in these proceedings has been conducted. Unfortunately, due to circumstances beyond my control as a State Review Officer, the Office of State Review has received an extraordinarily high influx of appeals. Additionally, until very recently, I have been the only State Review Officer available to hear appeals in state-level proceedings. Please be assured that I have no desire to see your cases delayed and understand that I am working as quickly as possible towards the completion of a thorough and careful analysis of all of the evidence and arguments presented by the parties in your cases. I sincerely apologize for the inconvenience this

causes and thank you and the parties for your continued patience. A copy of this letter has

been added to the administrative hearing record in each of the cases referenced above."

382.    The SRO Bates response acknowledged, "SRO Appeal No. 12-111 was

due on July 19, 2012; SRO Appeal No. 12-107 was due on July 22, 2012; SRO Appeal

No. 12-132 was due on August 17, 2012; SRO Appeal No. 12-080 was due on August

25,2012; SRO Appeal No. 12-137 was due on September 13, 2012; SRO Appeal No. 12-

152 was due on October 4,2012; SRO Appeal No. 12-177 was due on November

15,2012; and SRO Appeal No. 12-155 was due on November 17, 2012."

383.    On March 7, 2013, counsel for U.A. and R.A., Y.B. and R.B., D.F. and

D.G., R.C. and W.G., J.Q. and D.Q., S.R. and K.R., and J.W. and L.W. wrote to New

York State Governor Andrew M. Cuomo regarding the failure of the OSR, SRO Bates,

and SRO Deyoe to decide the eight cases (the "March 7, 2013 letter").

384.    The March 7, 2013 letter asked Governor Cuomo for the following,

"Order the Commissioner of Education to remove State Review Officer Bates;

Immediately affirm the seven decisions where parents won the impartial hearing and a

decision has not been rendered; Order the Commissioner of Education to appoint a new

impartial hearing officer to issue a decision in Appeal No. 12-152 as that IHO failed to

make educational findings; Appoint an ombudsman to conduct an investigation to

determine why so few decisions have been decided during the 2012 cycle; Appoint an

ombudsman to conduct an investigation to determine whether there has been collusion

between the New York City Department of Education and the State Review Office to

delay decisions in cases where parents seek tuition reimbursement or prospective

payment for the Rebecca School; and Appoint an ombudsman to conduct an investigation

to determine why the Commissioner of Education has not addressed this unreasonable and illegal delay."

385.    The March 7, 2013 letter was also sent to the DOE, SRO Bates and to Commissioner King.

386.    Commissioner King did not respond to the March 7, 2013 letter.

<u>ANALYSIS OF SRO DECISIONS</u>

387.    Plaintiffs have conducted a preliminary analysis of decisions by the OSR.

388.    The OSR publishes its decisions online at the following website: http://www.sro.nysed.gov/decisionindex/default.html (last checked April 23, 2013) (the "OSR website").

389.    The decisions are published by year. Upon information and belief, the decision-making year for the OSR begins approximately with cases filed the preceding year in late November or early December. Thus, a case filed in December 2011, would be denominated with a 2012 case number.

390.    According to the OSR website there were 165 decision during 2011 cycle. This includes cases with decisions and cases that were withdrawn. During the 2011 cycle, 20 cases were withdrawn, leaving 145 decisions issued. Upon information and belief, these 145 decisions were issued between February 11, 2011 and February 22, 2012.

391.    Upon information and belief, SRO Bates issued 117 decisions and SRO Deyoe issued 26 decisions during the 2011 cycle. This averages out to 9.75 decisions per month for SRO Bates and 2.17 decision per month by SRO Deyoe.

392.    As of April 23, 2013, the OSR website indicates that during the 2012 cycle 24 cases were withdrawn and 84 decisions have been issued. As of April 23, 2013, SRO Bates issued 65 decisions during the 2012 cycle. As of April 23, 2013, SRO Deyoe

issued 20 decisions during the 2012 cycle. Upon information and belief, the first decision

of the 2012 cycle were issued on or about February 6, 2012. Thus, in the 14 months

between February 6, 2012 and April 23, 2013 SRO Bates has issued 33 fewer decisions

than he issued during the twelve months of the 2011 cycle.

393.    Furthermore, there was a distinct slowdown in SRO Bates' decision

issuing during the latter part of the 2012 cycle. Upon information and belief, SRO Bates

issued three decisions in May 2012, three decisions in June 2012, three decisions in July

2012, three decisions in August 2012, two decision in September 2012, six decisions in

October 2012, zero decisions in November 2012, and two decisions in December 2012.

394.    School districts an incentive to appeal cases because the appeal delays the

implementation of an adverse decision. Furthermore, the delay causes a financial

hardship on parents who must pay for the following year's education without having been

reimbursed for the prior year.

395.    Examining the number of total SRO cases during the 2011 and 2012

cycles, it is clear that, while there were fluctuations the SRO issued an average of 10

decisions per month until June/July 2012. In May 2012 the SRO issued 13 cases. The

number dropped to 8 in June 2012. In July 2012, the SRO only issued 4 cases.

| Number of Published SRO Decisions during the 2011 and 2012 Cycle by Month | |
| --- | --- |
| Month | SRO Decisions |
| February 2011 | 3 (only includes 2011 decisions) |
| March 2011 | 8 |
| April 2011 | 9 |
| May 2011 | 3 |
| June 2011 | 16 |
| July 2011 | 15 |
| August 2011 | 16 |
| September 2011 | 11 |

| | |
|---|---|
| October 2011 | 16 |
| November 2011 | 6 |
| December 2011 | 10 |
| January 2012 | 17 |
| February 2012 | 12 (includes 2011 and 2012 decisions) |
| March 2012 | 12 |
| April 2012 | 16 |
| May 2012 | 13 |
| June 2012 | 8 |
| July 2012 | 4 |
| August 2012 | 3 |
| September 2012 | 2 |
| October 2012 | 5 |
| November 2012 | 0 |
| December 2012 | 2 |
| January 2013 | 6 |
| February 2013 | 1 |
| March 2013 | 4 |
| April 2013 | 3 |
| May 2013 | 2 |
| June 2013 | 3 |

## HARM

396.    As a direct and proximate result of defendants' actions plaintiffs have suffered severe and substantial damages.

397.    Plaintiffs have been harmed. There has been no final determination of their children's placements for the 2011-2012 and/or 2012-2013 school year and their child is accordingly without mandated services; to the extent that the parent has sought to provide these services unilaterally, the financial burden not only continues to be imposed on them but increases with each passing day.

398.    Plaintiffs have been harmed. Failure by OSR to comply in timely fashion rends the fabric of the special education due process remedial mechanism, which is premised on swift and timely resolution of disputes within a single school year so that subsequent years may be planned based upon the results of those resolutions, and, significantly, so that the child's pendency placement may be determined with clarity with respect to all ongoing proceedings. By continuing cases in a manner in which there is a

51

risk that the new placement year cannot be guided by a final administrative determination for the preceding year, the system itself is placed in jeopardy.

399.    Plaintiffs anticipate future harm. Plaintiffs' children have no last agreed upon placement. IEPs for the 2012-2013 school year were prepared with no last agreed upon placement. It appears that IEPs for 2013-2014 school year will be prepared without either party knowing what the child's last agreed upon placement will be.

400.    Plaintiffs need to make financial decisions for the 2013-2014 school year without knowing whether they will be reimbursed or have the tuition prospectively paid for the 2011-2012 or 2012-2013 school year. This causes a significant financial burden on plaintiffs.

401.    Plaintiffs have never waived or abandoned any claims or arguments under the IDEA or state law.

402.    Plaintiffs have exhausted their administrative remedies as required by 34 C.F.R. § 516 because further following the administrative procedures would be futile or inadequate.

403.    Plaintiffs seek equitable relief from this court to address the flagrant violation of plaintiffs' right to due process.

404.    Plaintiffs who have received late decisions have been harmed through the unreasonable delay before their decisions were rendered.

405.    Plaintiffs who have received decisions remain in this action because the delay by the SRO is capable of repetition yet evading review.

CLASS ACTION ALLEGATIONS

406.    This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bring this action, on behalf of themselves and all other similarly situated, as representative members of the

following proposed class (the "Class"): Parents or guardians of children living in New York State who meet the following dual criteria: (1) they are or will be parties to an appeal from the determination of an impartial hearing officer to the New York State Education Department, and (2) their appeals have not or will not be decided by the SRO within thirty days following the State Education Department's receipt of the entire submission of the appeal of the IHO decision. *Schmelzer v. New York*, 363 F. Supp. 2d 453, 461 (E.D.N.Y. 2003).

407.    For the foregoing reasons, this action fulfills the standards and requirements as outlined by Rule 23 of the Federal Rule of Civil Procedure. (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

408.    The proposed class is numerous. Plaintiffs estimate that there are approximately 200 members of the class and an unknown number of future members of the class.

409.    There are questions of law or fact common to the class. There is only one question with regard to the class. That question is the remedy flagrant and intolerable for violations of 34 C.F.R. § 515 (b) and N.Y. Educ. Law § 4410 (7)(d).

410.    The claims of the representative parties are typical of the claims of the class. The seventeen plaintiffs include parents who have received decisions after waiting 263 to 405 days. The seventeen plaintiffs include parents whose cases are between 44 and 453 days late. Thus, the plaintiffs encompass parents whose decisions by the OSR are late, flagrantly late, and unconscionably late.

411.    The representative parties will fairly and adequately protect the interests of the class. Plaintiffs seek a class remedy to fix the broken system in the OSR. Plaintiffs have the same interests as all members of the class. That interest is in having timely decisions issued.

412.    Furthermore, individual adjudication would prejudice party opposing the class. Individual adjudication would prejudice class members themselves. Injunctive or declaratory relief is proper on a class-wide basis. Common questions of fact or law predominate, and class action is superior device for adjudication.

413.    Individual adjudication would prejudice party opposing the class. If the defendants oppose class certification it will be because then the SRO can pick and choose which cases to decide as claims are filed. SED will waste resources combating individual claims.

414.    Individual adjudication would prejudice class members themselves. If this case is adjudicated on an individual basis the class members will be prejudiced. Members of the class will receive decisions only if their attorneys file federal actions. The SRO has already shown that it will issue decisions responsive to motions in federal court. This prejudices the class in several ways. First, the class members who are in court receive opinions out of order from the other class members. For example, S.R. and K.R. received a decision on July 5, 2013 in response to the Order to Show Cause filed on July 1, 2013. Whereas three other original plaintiffs had been waiting longer for opinions. Two additional plaintiffs have been waiting more than 150 days longer for a decision than M.R. Second, the SRO has issued decisions in six of the original eight cases. This is an attempt to moot out claims and avoid system wide relief. Third, there are undoubtedly

parents who are before the SRO *pro se* and unable to (or unaware of their ability to) go to federal court for relief. Fourth, the class members who receive decisions are prejudiced if they are dropped from the suit because they likely must then go to court in subsequent years to obtain relief again if the systemic problems are not addressed.

415.    Injunctive or declaratory relief is proper on a class-wide basis. The problem with the delayed decisions is a systemic problem that must be addressed on a systemic basis.

416.    Common questions of fact or law predominate, and class action is superior device for adjudication. Individual adjudication would be a waste of judicial resources. There is only one issue that is common to all members of the Class. What will the defendants do to correct the problem of intolerable delay at the OSR.

CAUSES OF ACTION

FIRST COUNT

FAILURE TO ISSUE A DECISION BY SRO BATES AND SRO DEYOE

417.    Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein.

418.    The OSR, SRO Bates, SRO Deyoe failed to properly discharge their duties as required by the IDEA, 20 U.S.C. §1401 et. Seq., the federal regulations promulgated thereunder, 34 C.F.R. Part 300, Article 89 of the New York State Education Law, and the Regulations of the Commissioner of Education, Part 200.

419.    SRO Bates and SRO Deyoe have unreasonably and illegally delayed issuing decisions in violation of the due process requirements of the IDEA and New York State law.

420.    The failure to issue timely decisions has harmed plaintiffs.

421.    Plaintiffs are harmed by not knowing whether they will be reimbursed for tuition when budgeting the following school year.

SECOND COUNT

FAILURE OF COMMISIONER KING TO PROVIDE DUE PROCESS UNDER THE IDEA AND NEW YORK LAW

422.    Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein.

423.    Commissioner King in his official capacity has failed to oversee the OSR and SRO Bates and SRO Deyoe.

424.    The OSR, SRO Bates, and SRO Deyoe failed to properly discharge their duties as required by the IDEA, 20 U.S.C. §1401 et. Seq., the federal regulations promulgated thereunder, 34 C.F.R. Part 300, Article 89 of the New York State Education Law, and the Regulations of the Commissioner of Education, Part 200.

425.    SRO Bates and SRO Deyoe have unreasonably and illegally delayed issuing decisions in violation of the due process requirements of the IDEA and New York State law.

426.    Commissioner King has allowed there to be unreasonable delays in the state appeal process of special education appeals, specifically appeals where parents seek tuition reimbursement.

427.    The failure to issue timely decisions has harmed plaintiffs.

428.    Plaintiffs are harmed by not knowing whether they will be reimbursed for tuition when budgeting the following school year.

<u>THIRD COUNT</u>

<u>VIOLATION OF PLAINTIFFS' RIGHTS UNDER 42 U.S.C. § 1983 BY SRO BATES,
SRO DEYOE, AND COMMISSIONER KING</u>

429.    Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein.

430.    Congress intended that IDEA rights be enforceable under 42 U.S.C. § 1983.

431.    Defendants SRO Bates and SRO Deyoe were acting within the course and scope of their employment at all material times, and under the color of state law.

432.    Defendant Commissioner King was acting within the course and scope of his employment at all material times, and under the color of state law.

433.    Defendants SRO Bates and SRO Deyoe have denied parents their right to a determination of their last agreed upon placement without due process of law.

434.    Defendants SRO Bates and SRO Deyoe have denied parents their right to due process of law.

435.    Defendants SRO Bates and SRO Deyoe have denied parents their right to a determination of their claims against the DOE by failing to issue timely decisions.

436.    The failure to issue timely decisions has harmed plaintiffs.

437.    Defendant Commissioner King knew of should have known that Defendants SRO Bates and SRO Deyoe were denying plaintiffs rights.

438.    Defendants acted intentionally and/or with callous disregard for plaintiffs' clearly established constitutional rights.

439.    Plaintiffs are harmed by not knowing whether they will be reimbursed for tuition when budgeting the following school year.

FOURTH COUNT

MISCONDUCT PROCEDURES

440.    Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein.

441.    Currently there is no effective mechanism for reporting complaints of misconduct of impartial hearing officers or state review officers.

442.    Both parents and school districts report misconduct of impartial hearing officers in appeals to the SRO. For example, parents reported misconduct of IHOs in the appeal of E.B. The DOE reported misconduct of IHOs in the appeals of S.W. and C.S.

443.    Reporting misconduct in this way has the following problems: misconduct is not addressed if not part of an appeal; it confuses appealable issues with misconduct; there is the potential to attempt to influence outcomes through allegations of misconduct.

444.    For example, in the appeal of S.W. the DOE alleged that the IHO committed misconduct because the IHO allowed witnesses to be questioned over the DOE's objections. The DOE also alleged that the IHO failed to provide a legal basis for her opinion. This allegation was untrue as the IHO cited relevant statutes, regulations, or cases over twenty times. In the appeal of C.S. the DOE alleged that the IHO committed misconduct for failing to cite to the record. This allegation was false as the IHO made over 80 citations to the record. Injecting such allegations into the appeal system poisons the two tier review that was established pursuant to federal law. 20 U.S.C. § 1415(f); 1415(g).

445.    The current system also does not provide for alleging misconduct on the part of SROs.

446.    This harms parents by affecting the way IHOs issue decisions and making them unable to allege misconduct absent an appeal. Parents also have no mechanism to allege SRO misconduct absent an appeal to federal court.

PRAYER FOR RELIEF

Wherefore, plaintiffs respectfully request that the Court:

Certify the Class: Parents or guardians of children living in New York State who meet the following dual criteria: (1) they are or will be parties to an appeal from the determination of an impartial hearing officer to the New York State Education Department, and (2) their appeals have not or will not be decided by the SRO within thirty days required by 34 C.F.R. § 515 (b) and N.Y. Educ. Law § 4410 (7)(d); *Schmelzer v. New York*, 363 F. Supp. 2d 453, 461 (E.D.N.Y. 2003).

Declare that plaintiffs have exhausted their administrative remedies as required by 34 C.F.R. § 516 because further following the administrative procedures would be futile or inadequate.

Declare that defendants SRO Bates and SRO Deyoe are in derogation of their duties as State Review Officers.

Declare that defendants SRO Bates and SRO Deyoe have engaged in judicial misconduct.

Declare that defendant Commissioner King is in derogation of his duties as the State Educational Agency.

Direct Commissioner King to develop procedures to monitor the decision process by SROs.

Direct Commissioner King and SED to develop a complaint procedure for the review of complaints alleging incompetence, misconduct, or failure to adhere to federal and state procedural mandates by an IHO or SRO, including establishment of procedures, sanctions, and a mechanism for the discipline and decertification of IHOs and SROs. This complaint procedure must be independent from the appeals process and independent from the State Review Office. Findings should be published by SED.

Declare that defendants New York State Education Department, Commissioner King, SRO Bates, and SRO Deyoe are not in compliance with 34 C.F.R. § 515 (b).

Declare that defendants New York State Education Department, Commissioner King, SRO Bates, and SRO Deyoe are not in compliance with N.Y. Educ. Law § 4410 (7)(d).

Direct defendants to comply with the 30 day requirement to issue a decision.

Direct defendants to issue all decisions that are currently overdue or in the alternative to summarily affirm such decisions.

Direct defendants to issue all decisions that are overdue or in the alternative to summarily affirm such decisions.

Direct defendants Commissioner King, SRO Bates, and SRO Deyoe shall be subject to a 60-month period of monitoring. Appoint an impartial Monitor who is not an employee of New York State.

Direct defendants Commissioner King, SRO Bates, and SRO Deyoe to prepare a report of the implementation of the Order and submitted to the Monitor, including (1) the name and title of each person employed by SED at the OSR for the month preceding such report and a statement of the functions performed by that person; (2) a schedule of SRO decisions issued, and for each decision, stating the date the request for review/appeal was filed, when the file was fully submitted to the OSR, appeal number and date of decision; (3) a chronological schedule, by date and appeal number, of requests for review/appeals filed with SED's Office of Counsel for the preceding month; provided, however, that for the initial report the required information shall cover the period from November 1, 2011 through the date of this Order. *Schmelzer v. New York*, 363 F. Supp. 2d 453, 461 (E.D.N.Y. 2003).

Direct defendants to prepare a list of all cases back to cases submitted to the SRO since November 1, 2011, noting the date the case was fully submitted to the SRO and the date the decision was published. Such list will be given to the court via the Monitor.

Direct defendants to publish the findings of the Monitor on its website.

Declare that plaintiffs are the prevailing parties in this action.

Direct defendants to pay prejudgment interest in all cases where the SRO does not issue a timely decision and parents are awarded monetary damages.

Direct defendants to pay for the costs and expenses of maintaining this action before the IHO and SRO pursuant to 20 U.S.C. § 1415.

Grant leave to plaintiffs to submit a statutory fee application.

Direct defendant to pay for the costs and expenses of maintaining this action, including reasonable attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B). And,

61

Grant such other or further relief that the Court may deem just and proper.


_____
LAWRENCE D. WEINBERG (LW7841)
Attorney for Plaintiffs

233 East 89th Street, 2A
New York City, NY 10128
646-422-7943
Fax: 718-228-5935

c/o Susan Luger Associates, Inc.
Special Education Advocates
155 West 72nd Street
Suite 201
New York, NY 10023
212-769-4644
Fax: 212-501-8090

lawrenceweinberg@gmail.com

Date: September 9, 2013

**APPENDIX**
**TABLE OF CASES**

| Child | Parent(s) | SRO No. | SRO Status |
|---|---|---|---|
| I.A. | U.A. and R.A. | 12-132 | Decided July 19, 2013 after 364 days |
| S.B. | A.B. and B. L. | 12-210 | Decided July 25, 2013 after 226 days |
| E.B. | Y.B. and R.B. | 12-152 | Decided July 5, 2013 after 308 days and remanded to IHO |
| M.G. | D.F. and D.G. | 12-155 | Decided July 26, 2013 after 281 days |
| E.G. | R.C. and W.G. | 12-137 | Decided July 5, 2013 after 340 days |
| D.Q. | J.Q. and D.Q. | 12-111 | Decided June 28, 2013, after 375 days |
| M.R. | S.R. and K.R. | 12-177 | Decided July 5, 2013 after 263 days |
| J.W. | J.W. and L.W. | 12-107 | Decided July 19, 2013 after 393 days |
| I.A. | K.A. and J.A. | 13-096 | No decision after 91 days |
| Y.B. | M. B. and R.B. | 13-104 | No decision after 74 days |
| C.C. | M.C. and L.K. | 13-052 | No decision after 129 days |
| K.H. | Y.F. | 13-034 | No decision after 147 days |
| C.M. | R.M. | 12-230 | No decision after 228 days |
| S.W. | S.W. and I.W. | 13-080 | No decision after 117 days |
| C.S. | D.P. and M.S. | 13-072 | No decision after 94 days |
| M.G.-L. | M.G. | 12-223 | No decision after 263 days |
| A.K. | M.S. | 12-108 | Decided August 5, 2013 after 405 days |
| O.C. | O.C. and Y.C. | 12-090 | No decision after 483 days |